IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

WOLFGANG NEBMAIER,             Civ. No. 1:18-cv-01258-MC

         Plaintiff,             **OPINION & ORDER**

    v.

JOSEPHINE COUNTY,

         Defendant.

_____

McSHANE, District Judge.

This matter comes before the Court on Plaintiff Wolfgang Nebmaier's Application for Leave to Proceed *in forma pauperis* ("IFP"), ECF No. 2. For the reasons discussed below, Plaintiff's IFP petition is GRANTED, but the Complaint, ECF No. 1, is DISMISSED with prejudice and without service upon Defendant Josephine County.

## LEGAL STANDARD

Generally, all parties instituting any civil action in United States District Court must pay a statutory filing fee. 28 U.S.C. § 1914(a). However, the federal IFP statute, 28 U.S.C. § 1915(a)(1), provides indigent litigants an opportunity for meaningful access to federal courts despite their inability to pay the costs and fees associated with that access. To authorize a litigant to proceed IFP, a court must make two determinations. First, a court must determine whether the litigant is unable to pay the costs of commencing the action. 28 U.S.C. § 1915(a)(1). Second, it must assess whether the action is frivolous, malicious, fails to state a claim upon

which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915(e)(2)(B).

In regard to the second of these determinations, district courts have the power under 28 U.S.C. § 1915(e)(2)(B) to screen complaints even before service of the complaint on the defendants, and must dismiss a complaint if it fails to state a claim. Courts apply the same standard under 28 U.S.C. § 1915(e)(2)(B) as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.*

*Pro se* pleadings are held to less stringent standards than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). That is, the court should construe pleadings by *pro se* plaintiffs liberally and afford the plaintiffs the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Additionally, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and the opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Id.*

# DISCUSSION

Plaintiff Nebmaier lives near the proposed site of a gravel pit. Nebmaier is opposed to the development of the gravel pit, which he believes will cause disruptive traffic and noise, as well as air and water pollution. Nebmaier unsuccessfully objected to the development of the gravel pit when the issue was under consideration with the Josephine County Board of Commissioners and Nebmaier alleges that the Oregon Land Use Board of Appeals ("LUBA") has affirmed the County's decision to permit development of the gravel pit.

For purposes of this federal action, Nebmaier asserts a claim under 7 U.S.C. § 301, part of the Morrill Act of 1862,[1] which provides:

> There is granted to the several States, for the purposes hereinafter mentioned in this subchapter, an amount of public land, to be apportioned to each State a quantity equal to thirty thousand acres for each Senator and Representative in Congress to which the States are respectively entitled by the apportionment under the census of 1860: *Provided*, That no mineral lands shall be selected or purchased under the provisions of said sections.

7 U.S.C. § 301.

Lands granted through the 1862 Morrill Act were to be surveyed and sold and the proceeds used to support the establishment and maintenance of state colleges and universities "for the benefit of agriculture and the mechanic arts." 7 U.S.C. §§ 302, 304; *McNee v. Donahue*, 142 U.S. 587, 590 (1892).

Nebmaier asserts that the land on which the proposed gravel pit is to be situated was originally sold as part of the land grant process under the 1862 Morrill Act and that the prohibition against mineral lands being selected or purchased in the granting process operates prospectively by forbidding any subsequent mineral extraction by the private purchasers of the

---

[1] A second Morrill Act was passed in 1890, 7 U.S.C. § 321 *et seq.*, which provided direct funding for state colleges and universities in lieu of land grants and placed restrictions on race-based admissions practices. 7 U.S.C. § 323; *State of Wyoming v. Irvine*, 206 U.S. 278, 283 (1907).

land. Nebmaier seeks declaratory and injunctive relief preventing the property at issue from being developed as a gravel pit.

Nebmaier may only bring suit if Congress has provided a private right of action by which an individual may seek to enforce these statutory provisions. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The ability to bring a private right of action may be authorized by the explicit statutory text or, in some instances, may be implied from the statutory text." *Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 929 (9th Cir. 2010).

Section 301 does not expressly provide a private right of action and Nebmaier therefore may only maintain his claim if there is an implied right of action. In the determining whether there is an implied right of action,

> [T]he "judicial task" remains to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Without evidence of a congressional intent to create both a private right and a private remedy, a private right of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.
>
> To create a private right, a statute must use rights-creating language. Language that focuses on the person regulated rather than the individuals protected will not do. Rather, the statute must place an *unmistakable focus* on the latter group. And to create a private remedy, a statute must (at the very least) avoid remedy-foreclosing language. Language establishing an express remedial scheme may foreclose an implied private right of action to enforce even those statutes that admittedly create substantive private rights.

*UFCW Local 1500 Pension Fund v. Mayer*, ___F.3d.___, No. 17-15435, 2018 WL 3384950, at *3 (9th Cir. July 12, 2018) (internal quotation marks, citations, and alterations omitted, emphasis in original).

In this case, a review of the Morrill Act of 1862 leads inexorably to the conclusion that Congress did not intend to create a private right of action. In the first instance, the Act's

prohibition on the selection of mineral lands as part of the apportionment is, by the plain terms of the statute, a restriction on the states. In *State of Wyoming v. Irvine*, 206 U.S. 278 (1907), the Supreme Court rejected a claim by the Wyoming Agricultural College concerning entitlement to the proceeds of the funds generated by the land grant sales. The Supreme Court held that "[t]he grant made in this statute is clearly to the state, and not to any institution established by the state." *Id.* at 283. It necessarily follows that the limitations associated with the grants were also meant to apply to the states and, among other conditions, prohibited them from selecting then-existing mineral lands as part of the apportionment of public land. There is nothing in the Morrill Act of 1862 to suggest that it was meant to operate prospectively to prohibit the subsequent private purchaser from mining on the land.

Furthermore, the restriction included in § 307 is not "rights-creating language" because it "focuses on the person regulated" (i.e., the states) rather than on individuals to be protected. Indeed, there is no reference whatsoever to "individuals protected" by the 1862 Morrill Act, let alone an "unmistakable focus" on the rights of such persons. Nothing in the 1862 Morrill Act suggests that Congress intended to create a private right of action for individuals aggrieved by their neighbors' use of land acquired under the Act's land grants.

In the absence of an express or implied private right of action, Nebmaier cannot maintain his claim under 7 U.S.C. § 301. There is no possible amendment that might create a private right of action where none exists and so Nebmaier's Morrill Act claim must be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Plaintiff's IFP Petition, ECF No. 2, is GRANTED, but the Complaint, ECF No. 1, is DISMISSED with prejudice and without service upon Defendants. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this 27th day of July, 2018.

                                                s/Michael J. McShane
                                                MICHAEL McSHANE
                                                United States District Judge